UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **CLAUDE REED, ET AL.** | * | **CIVIL ACTION NO. 09-0676** |
| **VERSUS** | * | |
| **TOKIO MARINE AND NICHIDO FIRE INSURANCE COMPANY LTD., ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

### MEMORANDUM RULING[1]

Before the court are two motions filed by plaintiffs Claude Reed and Arlethia Reed: 1) a motion for partial summary judgment [doc. # 23], and 2) a related motion to strike [doc. # 36]. For reasons assigned below, the motion for summary judgment is GRANTED, and the motion to strike is GRANTED IN PART and DENIED IN PART.

### Procedural History

The instant suit represents the unfortunate culmination of a June 12, 2008, traffic accident between a 2004 Mercury Sable and a 2007 Ford F-150, operated by Claude Reed ("Reed") and William H. Lewis, Jr. ("Lewis"), respectively. (Petition, ¶ 2). The F-150 collided with the Sable at the intersection of North 14th Street and Adams Street in Monroe, Louisiana. *Id*. At the time, Lewis was operating the pickup truck in the course and scope of his employment with Makita USA, Inc. ("Makita"), which also owned the truck. (Petition, ¶¶ 2, 9). As a result of the accident, Reed suffered severe injuries to his back, neck, left shoulder, left elbow, left leg, right

---

[1] With the consent of all parties, the above-captioned case has been referred to the undersigned for the conduct of all further proceedings and the entry of judgment. 28 U.S.C. § 636(c).

ribs, and a ruptured cervical disk. *Id*. at ¶ 4.

Accordingly, on March 20, 2009, Reed and his spouse, Arlethia, filed the instant suit in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana, against defendants, Lewis, Makita, and their liability insurer, Tokio Marine & Nichido Insurance Company Ltd. ("Tokio Marine"). (Petition). Reed contends that the accident and his resulting damages were caused by Lewis's negligence. (Petition, ¶ 3). He seeks to recover past and future damages for pain and suffering, disability, mental anguish, medical expenses, lost earnings, and property damage. (Petition, ¶¶ 4-9). Arlethia Reed seeks an award for loss of consortium and society. *Id*. at ¶ 10.

On April 22, 2009, defendants removed the case to federal court on the basis of diversity, 28 U.S.C. § 1332. (Notice of Removal).[2] On February 22, 2010, plaintiffs filed the instant motion for partial summary judgment seeking a determination that the sole and legal cause of the June 12, 2008, accident was the fault and negligence of Lewis, thereby rendering all three defendants solidarily liable for plaintiffs' damages. (MPSJ [doc. # 23]). On March 16, 2010, defendants filed an opposition memorandum and attached an affidavit executed by defendant, Lewis. (Opp. Memo. [doc. # 35]). On March 23, 2010, plaintiffs filed a motion to strike paragraphs 12-15 of Lewis's affidavit. (M/Strike [doc. # 36]). Defendants filed their opposition to the motion to strike on April 14, 2010. (Opp. Memo. [doc. # 47]). The briefing deadlines have since lapsed; thus, the motions are now ripe. The court will address the merits of the motion to strike within the confines of the motion for partial summary judgment.

---

[2] The parties are completely diverse and the amount in controversy exceeds $75,000. *See* Notice of Removal.

2

### Summary Judgment Principles

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007) (citation omitted).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an

actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

When a movant bears the burden of proof on an issue, he must establish "beyond peradventure[3] all of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish his right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

### Uncontroverted and Established Facts

The court adopts and incorporates herein the facts set forth in plaintiff's[4] Statement of Uncontested Facts attached to his motion for partial summary judgment. (Statement of Uncontested Facts [doc. # 23]). Defendants do not controvert the facts included in plaintiff's Statement. *See* Defs. Statement of Contested Material Facts [doc. # 35-4].[5] Accordingly, they are deemed admitted. LR 56.2. In any event, the facts are supported by plaintiff's

---

[3] I.e., beyond doubt.

[4] Although the motions are urged on behalf of both plaintiffs, the court will refer to plaintiffs in the singular.

[5] Instead, defendants' Statement concentrates upon Reed's alleged fault in causing the accident. *Id*.

4

uncontroverted evidence. *See* Pl. Exhs. 1-8 [doc. # 29].

1. On or about June 12, 2008, a collision occurred at the intersection of North 14th Street with Adams Street in Monroe, Ouachita Parish, Louisiana, between a 2004 Mercury Sable automobile operated by Plaintiff, Claude Reed, and a 2007 Ford F-150 pickup truck operated by Defendant William H. Lewis, Jr. and owned by Defendant Makita USA, Inc.

2. Just prior to the collision described in No. 1 above, Defendant, William H. Lewis, Jr., was operating the 2007 Ford F-150 pickup truck in a westerly direction on Adams Street.

3. Just prior to the collision described in No. 1 above, Plaintiff, Claude Reed, was operating a 2004 Mercury Sable automobile in a southerly direction on North 14th Street.

4. A stop sign controlled traffic approaching North 14th Street on Adams Street.

5. There is no traffic control device for traffic proceeding southerly on North 14th Street at the time of the accident and thus, Plaintiff Claude Reed had the right of way.

6. In the collision sued upon, the front of the pickup truck operated by Defendant, William H. Lewis, Jr. struck the driver's door of the vehicle operated by Plaintiff, Claude Reed.

7. At the time of the collision sued upon, Defendant, William H. Lewis, Jr. was operating the 2007 F-150 pickup truck owned by Defendant, Makita USA, Inc., on business for his said employer, Makita USA, Inc.

8. At the time of the accident sued upon, there was in full force and effect a policy of automobile liability insurance issued by Defendant Tokio Marine and Nichido Fire Insurance Company, Ltd. providing coverage on the 2007 Ford F-150 pickup truck owned by Defendant Makita USA, Inc. and operated at the time by Defendant William H. Lewis, Jr.

9. Defendant William H. Lewis, Jr. was issued a traffic citation by the investigating officer for failure to yield in connection with the accident sued upon, which citation was paid by said Defendant.

10. That William H. Lewis, Jr. thought that the intersection was a four

        way stop and he therefore entered the intersection and struck the Reed vehicle.

11.    That Claude Reed sought medical treatment immediately after the accident at St. Francis Medical Center Emergency Room and was taken there from the scene of the accident by ambulance.

12.    That Defendant Tokio Marine and Nichido Fire Insurance Company, Ltd. paid for the total loss of the vehicle of Plaintiff Claude Reed.

## Law and Analysis

Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211(1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817 (1938). The parties in this matter implicitly agree that the disputed issues are governed by the substantive law of Louisiana.[6] *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled), *cert. denied sub nom. Xavier University of Louisiana v. Travelers Cas. Property Co. of America*, 552 U.S. 1182, 128 S.Ct. 1230 (Feb 19, 2008); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).[7]

**I.**    **Defendants' Negligence**

    a)    <u>William Lewis, Jr.</u>

---

[6] Both sides analyzed plaintiffs' claims pursuant to Louisiana law.

[7] In *Jefferson*, the Fifth Circuit's decision incorporated the underlying district court opinion, 930 F. Supp. 241 (E.D. La. May 31, 1996) (J. Vance)

In Louisiana, courts employ a duty-risk analysis to assess a party's alleged negligence. *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005) (citation omitted). Under the duty-risk analysis, the plaintiff must establish five elements:

(1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element);

(2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element);

(3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);

(4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and

(5) proof of actual damages (the damages element).

*Id*.

Furthermore, it is well settled that

[a] motorist who is confronted with a stop sign at an intersection is required to bring his vehicle to a complete stop before entering the crossing, to appraise traffic in the intersecting street and to make certain that the way is clear for him to make a safe passage across the intersection before he enters it.

*McElroy v. Wilhite*, 903 So.2d 627, 631-632 (La. App. 2d Cir. 2005) (citations omitted); *see also Toston v. Pardon*, 874 So.2d 791, 801 (La. 2004) (vehicle at a stop sign has a duty to yield to all vehicles that are approaching so closely as to constitute an immediate hazard) (citing La. R. S. 32:123(B)).

In his deposition, Reed stated that he first saw Lewis's vehicle as Reed entered the intersection. (Reed Deposition, pg. 47; Pl. MPSJ, Exh. 1). He emphasized that Lewis did not come to a complete stop at the stop sign; Lewis merely "bumped" his brakes and then "floored" it. *Id*., pgs. 52-53. In contrast, Lewis averred that he did come to a stop at the stop sign on Adams Street, but that he could not see Reed's car because a large building on the corner blocked his view. (Lewis Affidavit, Opp. Memo., Exh. A [doc. # 35]. For purposes of this motion, the

court must resolve this disputed fact in favor of the non-movant, Lewis.

Nonetheless, even assuming that Lewis came to a complete stop at the stop sign, it is clear that

> stopping is only half the duty, the other half is not to proceed until [] determining that the way is clear. The second duty is heavier and requires an even greater degree of care when the intersection is blind, or partially obstructed. A driver entering a superior highway where his view is obstructed is under a duty to proceed with extraordinary caution.

*Toston*, 874 So.2d at 802 (citations omitted).

In addition, "[i]f a motorist fails to see what he should have seen, then the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did see what he should have seen." *Sanchez Fernandez v. General Motors Corp.* 491 So.2d 633, 636 -637 (La. 1986).

In the case sub judice, the uncontroverted facts establish that Lewis breached his duty to yield the right of way to Reed, and that the scope of this duty encompassed the resulting accident. *See Toston*, 874 So.2d at 801-802 (duty of care was clearly breached where, among other things, driver failed to yield right of way). Likewise, Lewis's failure to yield was a substantial factor in precipitating the accident, i.e. a cause-in-fact. *See Boykin v. Louisiana Transit Co., Inc.*, 707 So.2d 1225, 1230 (La. 1998) (discussing cause-in-fact) (citation omitted).[8] Reed also suffered resulting damages. (Reed Depo., pg. 51). Accordingly, it is manifest that Lewis was negligent. *See McElroy v. Wilhite*, 903 So.2d 627, 631-632 (La. App. 2d Cir. 2005) ("To stop and then proceed in the immediate path of oncoming vehicles constitutes negligence."); *Audubon Ins. Co. v. Knoten*, 325 So.2d 624, 625-626 (La. App. 4th Cir. 1976) (defendant was negligent for attempting to traverse the intersection directly in front of approaching traffic at a time when it

---

[8] But for Lewis's failure to yield, the accident never would have occurred.

was obviously unsafe to do so); and *Continental Ins. Co. v. Duthu*, 235 So.2d 182, 186 (La. App. 4th Cir.1970) (motorist was negligent in proceeding out into favored street with an obstructed view in the direction of oncoming traffic without first ascertaining that it was safe to do so).

      b)      <u>Makita</u>

Plaintiff contends that because Makita employed Lewis at the time of the accident, Makita shares liability for Lewis's negligence. Indeed, under the Louisiana Civil Code, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. Civ. Code Art. 2320. However, an employer is liable for its employee's tortious conduct only when the employee was acting within the course and scope of his employment at the time of the accident. *Ellender v. Neff Rental, Inc.*, 965 So.2d 898, 900 (La. App. 1st Cir. 2007) (citation omitted).

Here, Makita admitted that at the time of the collision, Lewis was operating the pickup truck in the course and scope of his employment with Makita. (Tokio Marine and Makita's Resp. to Req. for Admission; Pl. Exhs. 7 & 8). Accordingly, the uncontroverted evidence establishes that Makita is vicariously liable for Lewis's negligence. As a result, Makita and Lewis are solidarily liable to Reed. *Etienne v. National Auto Ins. Co.*, 759 So.2d 51, 55 (La. 2000). (employer and employee are solidarily liable to the victim).

      c)      <u>Tokio Marine</u>

Plaintiff concludes his motion for partial summary judgment by asserting that Tokio Marine is liable for his damages because it provided coverage to Makita and Lewis. Under Louisiana's Direct Action Statute, "[An] injured person . . . shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought

against the insurer alone, or against both the insured and insurer jointly and in solido, . . . ." La. R.S. 22:1269(B)(1). A liability insurer is solidarily liable with its insured to the extent of the policy limits and coverages of the insurance contract. *Morvan v. Moore*, 2 So.3d 1204, *5 (La. App. 2d Cir. 2009 (citations omitted).

Here, defendants have adduced a copy of the police report which indicates that Tokio Marine provided liability insurance on the F-150 truck operated by Lewis. *See* Traffic Crash Report; Opp. Memo., Exh. B. In addition, Tokio Marine admitted that it paid for plaintiff's damage to his Mercury Sable as a result of the accident. (Tokio Marine's Resp. to Req. for Admission; Pl. Exh. 7). Thus, the uncontroverted evidence establishes that Tokio Marine provided liability coverage for its insureds, Makita and Lewis. As such, Tokio Marine is solidarily liable with Makita and Lewis for plaintiff's damages to the extent of its policy limits. *Morvan, supra*.

In sum, plaintiff has established beyond all peradventure that no reasonable juror could find in favor of defendants on the twin issues of defendants' liability and solidarity. *See Jenkins, supra*.

## II. Comparative Fault

Defendants contend that plaintiff is not entitled to summary judgment on the issue of liability because comparative fault issues remain in dispute. Under Louisiana law,

> [i]f a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
>
> B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

La. Civ. Code Art. 2323(A) & (B) (in pertinent part).

When a party defendant alleges the comparative fault of another as an affirmative defense, the party defendant must establish by a preponderance of the evidence that the other party's fault was a cause-in-fact of the damage at issue. *Dupree v. City of New Orleans*, 765 So.2d 1002, 1015 n13 (La. 2000).

Defendants contend that Reed breached his duty of reasonable care by failing to maintain a proper lookout, by failing to employ avoidance maneuvers, and by speeding.[9] The first two duties depend upon when Reed perceived or should have perceived that Lewis did not intend to yield the right of way. Thus, they will be addressed as one.

      a)      <u>Improper Lookout/Failure to Avoid the Accident</u>

Under Louisiana law, a motorist who enjoys the right of way nonetheless owes a duty of ordinary care toward drivers entering from side streets. *Tatum v. Old Republic Ins. Co.*, 643 So.2d 419, 423 (La. App. 3d Cir.1994) (citation omitted); *Edwards v. Pierre*, 994 So.2d 648, 657-658 (La. App. 4th Cir. 2008) (citation omitted). However, it is well settled in Louisiana that "only in *exceptional circumstances*, where the motorist on the favored street could have avoided the accident by the exercise of the *slightest sort of observation and care*, that he will be found derelict." *Bourgeois v. Francois*, 245 La. 875, 884, 161 So.2d 750, 753 (La. 1964) (citations omitted) (emphasis added). In this regard,

> a motorist, who is [on] a right-of-way street as he approaches an intersection where traffic on the less favored street is required to stop and is warned of this requirement by a stop sign, has a right to assume that any driver approaching from the less favored street will observe the law; ordinarily he is not negligent in

---

[9] Defendants also assert that plaintiff had the "last clear chance" to avoid the accident. As defendants recognize, however, the "last clear chance" doctrine has been subsumed into the comparative fault analysis. *Miciotto v. Brown*, 2005 WL 1431703 (E.D. La. May 25, 2005) (citation omitted); *Gibson v. State, Through Department of Transportation and Development*, 674 So.2d 996, 1003 (La. App. 1st Cir. 1996).

> proceeding past a blind corner into the intersection at a reasonable speed or in failing to observe the approach of a vehicle on the less favored street when the view is blocked; and until he sees that the other car is not going to observe the law he has the right to assume that the latter will come to a stop in compliance therewith.

*Westchester Fire Ins. Co. v. Dardar*, 158 So.2d 239, 241-242 (La. App. 4th Cir. 1963).

In his affidavit, Lewis states, in pertinent part, that

> 13. Mr. Reed had the opportunity to see the front of my vehicle as it entered the intersection before I had the opportunity to see his vehicle due to the presence of the building mentioned above and its obstruction of my view.
>
> 14. Mr. Reed did not slam on his brakes, swerve, or make any other evasive maneuvers in an effort to avoid the collision that occurred.

Lewis Affidavit, ¶¶ 12-15; Opp. Memo., Exh. A [doc. # 35].

Taking the second paragraph first, the court understands that Lewis's statement is limited to his personal observations. *See* Opp. Memo., pg. 4. Although broadly worded, Lewis's statement is not intended to be conclusive or a scientific assessment of these facts. Clearly, however, the duty to apply brakes or to swerve does not arise until the driver observes or should have observed the need to do so. This, of course, implicates Lewis's 13th paragraph wherein he seemingly applies commonly understood line of sight principles to deduce that because the building is situated adjacent to the intersection, Reed should have observed the front of Reed's vehicle before Lewis saw Reed's vehicle.

By itself, however, Lewis's deduction fails to support a finding of fault because even if Reed had observed the front of Lewis's car at the stop sign, he was entitled to maintain the assumption that Lewis would yield the right of way until such time as he observed otherwise.[10] In his deposition, Reed stated that he did not see Lewis's vehicle until he entered the intersection.

---

[10] Reed previously had traveled this section of 14th Street. (Reed Depo., pg. 44).

(Reed Depo., pg. 47). In fact, the front part of Reed's car entered the intersection before Reed saw Lewis. *Id*. at pg. 49. Further, the fact that Lewis struck the side of Reed's vehicle confirms that Reed was at, or very near the intersection when Lewis entered the intersection. Because Lewis necessarily would have to have been accelerating into the intersection at a deliberate pace (the physical evidence suggests that he was)[11] before Reed reasonably would have been obliged to appreciate that Lewis was not going to yield the right of way,[12] no reasonable juror could conclude that Reed had a duty to attempt to avoid the accident, or that, if a duty arose, any breach was a cause-in-fact of the accident. *See Sanchez-Fernandez, supra*. Stated differently, in response to plaintiff's motion for summary judgment, defendants have not adduced any admissible evidence to demonstrate that Reed either saw, or should have seen that Lewis was not going to cede the right of way at a point where he had sufficient time to attempt to avoid the accident. *See Audubon Ins. Co. v. Knoten*, 325 So.2d 624, 625-626 (La. App. 4th Cir. 1976) (defendants failed to sustain their burden of proof where there was no evidence to indicate that the danger could or should have been observed at a time before the accident became inevitable).

  b) <u>Excessive Speed</u>

Louisiana law imposes a duty on drivers not to exceed the legal speed limit. *Stewart v. Wilkerson*, 773 So.2d 160, 164-165 (La. App. 3d Cir. 2000) (citation omitted). "[T]he duty to drive the vehicle within a speed limit is designed to allow adequate braking time, thereby protecting against the risk that one might be confronted with an emergency." *Stewart v.*

---

[11] The force of the impact caused Reed's car to spin 60 to 70 degrees, while Lewis's car continued straight past the point of impact. *See* Traffic Crash Report, Opp. Memo., Exh. B

[12] If Lewis had slowly breached the blind intersection, Reed reasonably would have believed that Lewis was attempting to improve his vantage point to check for traffic on the cross-street.

*Wilkerson*, 773 So.2d 160, 164-165 (La. App. 3d Cir. 2000).

In support of his motion for summary judgment, plaintiff adduced evidence that he was not exceeding the 25 mile per hour speed limit at the time of the accident. (Reed Depo., pgs. 46-47, Pl. Exh. 1; Derrick Echols Affidavit, Pl. Exh. 2). In response, Lewis proffered that,

> 12. It is my opinion, based on my years of driving experience and years of experience observing vehicular traffic, that Mr. Reed was traveling well in excess of the posted speed limit as I entered the intersection
>
> \*   \*   \*
>
> 15. It is my opinion that, had Mr. Reed been traveling at or under the posted speed limit, he would have had the opportunity to brake sufficiently and/or steer his vehicle in such a manner as to have allowed him to avoid the collision that occurred.

Lewis Affidavit, ¶¶ 12-15; Opp. Memo., Exh. A [doc. # 35].

Plaintiff contends that the foregoing paragraphs of Lewis's affidavit exceed the scope of Federal Rule of Evidence 701.[13] He argues that in order to admit a layperson's opinion regarding the speed of a car, the witness must first demonstrate that he has experience gauging vehicle speeds and that he had an opportunity to view the vehicle's progress. (Pl. Memo., pgs. 1-2 [doc. # 36]) (citing *Carpino v Kuehnle*, 54 F.R.D. 28 (W.D. Pa. 1971)).[14] The Fifth Circuit has remarked, however, that

---

[13] The rule states that
> [i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed.R.Evid. 701.

[14] The *Carpino* court cautioned that it excluded the witness's testimony because he did not observe the vehicle long enough to gauge its speed, not because a layperson is not qualified to estimate speed. *Id*.

14

> [u]nlike expert opinion, where the opinion is the product of applying special skill in some art, trade, or profession acquired apart from the case, lay opinion expresses a conclusion drawn from observations in circumstances where it is impractical, if possible at all, to recount the observed "factual" components of the opinion. The common illustrations are an expression of opinion by a lay observer of a car's speed or a person's expression or emotional state (he was furious).

*United States v. Carlock*, 806 F.2d 535, 552 (5th Cir. 1986).

Citing *Carlock*, district courts in this circuit permit eyewitnesses to express their opinions regarding the speed of an observed vehicle. *See Brossette v. Swift Transp. Co., Inc.*, 2008 WL 4809411 (W.D. La. Oct. 29, 2008) (Hicks, J.); *Robinson v. Ryan*, 2008 WL 5111079 (N.D. Miss. Dec. 3, 2008).

Moreover, the Fifth Circuit has directly sanctioned the admissibility of eyewitness testimony regarding a vehicle's speed without a foundation as to the witness's expertise in this area, and despite evidence that it was difficult or impossible for the witness to estimate speed from his vantage point. *See Ford v. Southwestern Greyhound Lines*, 180 F.2d 934, 936 (5th Cir. 1950). Rather, the court said that the circumstances of the witness's observation go to the weight of the testimony. *Id*.

Applying the foregoing considerations here, the court observes that Lewis's job frequently requires him to operate a vehicle, and that he has held a driver's license for 20 years. (Lewis Affidavit). It is also significant that Lewis did not hazard an estimate as to plaintiff's exact speed, only that his speed was "well in excess" of 25 miles per hour. *Id*. The principal shortcoming with Lewis's estimate, however, is that he did not state how long he observed Reed's car prior to impact, and, in any event, the observation period was necessarily so short that Lewis himself did not have time to take any avoidance measures.[15] This exceedingly brief

---

[15] Lewis did not state that he attempted to brake prior to the accident. *See* Lewis Affidavit. Furthermore, Lewis's momentum was such that it spun Reed's car sideways.

period, perhaps one second or even a split-second, raises serious doubts that Lewis had enough time to observe and estimate Reed's speed.

Nonetheless, even if the court were to credit Lewis's speed estimate, the court cannot accept Lewis's conclusory statement in paragraph 15 of his affidavit that Reed's purportedly excessive speed was a cause-in-fact of the accident. (Lewis Affidavit, ¶ 15). Lewis's proposed opinion regarding Reed's ability to avoid the accident depends upon unknown facts such as Reed's actual rate of travel, and when Reed realized, or should have realized that Lewis was not going to cede the right of way to Reed. Moreover, because of the temporal, spatial, and stopping variables that comprise such an opinion, the court is not persuaded that Lewis's opinion rationally stems from his perceptions or that it may be rendered without the benefit of scientific, technical, or other specialized knowledge. *See* Fed.R.Evid. 701. Reasonableness of a party's actions and ultimate questions of fault lie outside the realm of lay testimony. *See Brossette, supra*. In the end, Lewis's proposed statement is no more than an assumption, and thus, lacks probative value. *See Continental Ins. Co.*, 235 So.2d at 185-186.

Having declined to consider Lewis's conclusory opinion on causation, the record remains otherwise devoid of evidence to support a finding that Reed's purportedly excessive speed was a substantial factor (cause-in-fact) behind the accident. *See Boykin v. Louisiana Transit Co.*, Inc., 707 So.2d 1225, 1230 (La. 1998) (discussing cause-in-fact when there are concurrent causes). Stated another way, assuming that Reed was speeding prior to impact, there is no evidence to suggest that had he entered the intersection at the speed limit, he would have had sufficient time to avoid the collision once it became clear that Lewis intended not to yield the right of way.[16]

---

[16] The Louisiana Supreme Court has recognized that it is "totally unreasonable" to conclude that in a little over one second, a motorist could appreciate that another driver is not

This evidentiary omission fatally undermines defendants' comparative fault claim.

Once a movant has submitted evidence or pointed to an absence of evidence regarding a matter that the non-movant would bear the burden of proof at trial, the onus shifts to the non-movant to demonstrate by competent summary judgment proof that there is an issue of material fact warranting trial. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). In response to plaintiff's motion, defendants have not adduced any competent summary judgment evidence to show that plaintiff's actions or inaction were a cause-in-fact of the accident. Of course in the absence of requisite proof, the courts cannot "assume that the nonmoving party could or would prove the necessary facts" at trial. *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995) (citation omitted).

## Conclusion

For the reasons set forth above, the undersigned finds that there is no genuine issue as to

---

going to yield the right of way and then to "react by removing [his] foot from the accelerator and placing it on the brake." *Sanchez Fernandez, supra*.

Defendants cite cases where the courts assigned fault to the motorist on the favored roadway, despite another driver's failure to yield. Upon closer inspection, however, they prove inapposite. For instance, in *James v. Jones*, although the plaintiff failed to yield the right of way, the court apportioned fault against the driver on the favored roadway. *James v. Jones*, 759 So.2d 896 (La. App. 5th Cir. 2000). In that case, however, the right of way motorist was traveling 59 miles per hour in a 45 mile per hour zone, and evidence was presented regarding when the motorist would have perceived the failure to yield, the distance involved, and available reaction time. *Id*. In *McElroy v. Wilhite*, the appellate court reduced the trial court's apportionment of comparative fault against the motorist on the favored roadway because she was speeding. *McElroy v. Wilhite*, 903 So.2d 627 (La. App. 2d Cir. 2005). Despite a dearth of evidence on causation, the court did not focus upon whether the excessive speed was a substantial factor behind the accident. *Id*. Moreover, in contrast to the case at bar, there was evidence that the motorist on the favored roadway had observed the approaching car some distance away from the intersection, albeit she assumed, incorrectly as it turns out, that it would yield the right of way. *Id*.

any material fact and that plaintiffs are entitled to a judgment as a matter of law on the limited issue of liability. Fed.R.Civ.P. 56. Accordingly,

**IT IS ORDERED** that the motion for partial summary judgment [doc. # 23] filed by plaintiffs, Claude Reed and Arlethia Reed, is hereby **GRANTED**; judgment shall be entered in favor of plaintiffs, CLAUDE REED and ARLETHIA REED, and against defendants, declaring that the sole and legal cause of the accident sued upon is the fault and negligence of defendant WILLIAM H. LEWIS, JR. and therefore defendants, WILLIAM H. LEWIS, JR., MAKITA USA, INC., and TOKIO MARINE & NICHIDO FIRE INSURANCE COMPANY LTD. (to the extent of its policy limits) are liable *in solido* for all damages caused by the collision sued upon, leaving the issues of causation and quantum of damages to be determined by the jury.

**IT IS FURTHER ORDERED** that the motion to strike [doc. # 36] filed by plaintiffs, Claude Reed and Arlethia Reed, is hereby **GRANTED IN PART, and DENIED IN PART** in accordance with the court's consideration of the evidence herein.

THUS DONE AND SIGNED at Monroe, Louisiana, this 6th day of May 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE